WARDER, MITCHELL & Co. v. PATTEE BROS. & Co.

1. **Promissory Note:** EXECUTED BY AGENT: EVIDENCE. Where an agent executed a note in the name of his principals, by himself as agent, for the purchase of property to be used in the business of his agency, and the evidence leads to the conclusion that the principals either consented to the purchase, or assented to it afterwards, they will be liable on the note.

*Appeal from Jackson District Court.*

SATURDAY, DECEMBER 17.

ACTION upon a promissory note purporting to be executed to Davis & Collins by the defendants, Pattee Brothers & Co., by E. C. Bickford, agent, and indorsed by Davis & Collins to the plaintiffs. The defendants for answer denied that Bickford had authority to use their name in the execution of the note. The plaintiffs then filed an amendment to their petition in which they averred that D. & C. sold to the defendants a team of horses, wagon and harness for the amount for which the note was given, and that the plaintiffs have become the equitable owners of the account for said property. They also stated that they were uncertain as to whether they could prove the authority of Bickford to execute the note, but that they sought to recover only the amount thereof, whether the same be recoverable upon the note or account. The defendants denied the

allegations of the amendment. The court by consent of parties made an order that the cause be tried as an equitable one. It was accordingly so tried, and judgment was rendered for the plaintiffs. The defendants appeal.

*S. D. Lyman* and *A. R. Cotton*, for appellants.

*S. S. Simpson* and *L. A. Ellis*, for appellees.

ADAMS, CH. J.—The defendants' firm is composed of H. H. Pattee, J. H. Pattee and J. C. Pillsbury, and is engaged in

1. PROMIS-SORY note: executed by agent: evidence.

manufacturing cultivators at Monmouth, Ill. In their business they employed Bickford as a traveling agent. Soon after his employment he purchased in the name of his employers the team of horses, wagon and harness of Davis & Collins, and used the same in his business. The note in question was given for the purchase money.

We do not think that there was anything in the nature of Bickford's employment which implies authority to purchase the property. As to whether the authority was expressly given the evidence is conflicting and leaves our minds in some doubt. Bickford testifies that the authority was expressly given him by a letter now lost, and that the letter was shown to Davis & Collins at the time when the purchase from them was made. M. Collins, of the firm of Davis & Collins, testifies that such letter was shown him and read by him. For the purpose of rebutting this evidence the testimony of two of the defendants was taken and they both deny that they wrote such letter, and deny that such letter was written by any member of the firm. They also testify that after the execution of the note they received a telegram from Davis & Collins inquiring if Bickford was authorized to purchase a team; and they ask us to infer that it was not true that Davis & Collins had been shown a letter giving such authority, as that would have obviated the necessity of inquiring by telegraph.

One of the Pattees also testifies that after this action was commenced Collins admitted to him that he read no letter giving the authority in question. But Collins positively denies making such admission, and it cannot be considered as proven that he did. The sending of the telegram would indicate that Davis & Collins did not feel satisfied by the evidence which they had of Bickford's authority, but this might have been because they were not certain of the genuineness of the letter, or because they did not retain such letter in their possession. While the Pattees testified that no member of their firm wrote such letter, it is evident they did not positively know this, and that it might have been written by Pillsbury. There was circumstantial evidence, it is true, tending to show that it was not written by him. But we should hardly be justified in believing that any witness committed perjury if the testimony can be reconciled by any rational explanation.

Bickford testified that after he purchased the team and used it for a while, the defendants wrote him that they wished he would sell it, and expressed a hope that they would not lose anything. Both the Pattees deny writing any such letter, but it might have been written by Pillsbury.

As impairing to some slight extent, at least, the credibility of the Pattees, we may mention the unqualified way in which they saw fit to testify to what they could not, in the nature of things, positively have known.

Again, one of the Pattees testifies that they paid Bickford for the use of the team at the time of Bickford's final settlement. On cross-examination he shows that Bickford was owing them at that time, and it was made abundantly evident that no money passed to Bickford for the purpose of making such payment, and it is not certain indeed that anything was actually credited him in account.

In view then of the evidence, taken together, we have reached the conclusion that the defendants either consented to the purchase beforehand or assented to it afterwards.

Whether it would follow from the mere authority to purchase that Bickford had the authority to give the defendants' note, we do not determine. There is some evidence that the defendants regarded themselves in need of a team to be used by Bickford, and that they did not feel able to pay for the same in cash. There is also some evidence that after the defendants had been informed of the existence of the note they recognized their liability upon it. Bickford testifies that J. H. Pattee met him at Cedar Rapids and asked him if he would be ready to pay the note *without the defendants looking after it.* This, it is true, would seem to indicate that Pattee regarded Bickford as under obligation to pay it, but it was a clear recognition, we think, of the defendants' liability. Bickford might have obligated himself to the defendants to pay it by reason of his indebtedness to them, on final settlement, or by reason of some deal not disclosed in the evidence.

We ought to say that Pattee denies saying to Bickford at Cedar Rapids what Bickford says he did, and testifies to saying something very different. But what he testifies to is inconsistent with the conclusion we have reached in regard to authority to make the purchase, and we have to say that the testimony of Bickford appears the more credible.

We are of the opinion then that the defendants were liable upon the note.

Having reached this conclusion we need not consider the question raised by defendants as to the right of the plaintiffs to recover upon the account.

AFFIRMED.